JAMES BONNEY *vs.* CHARLES J. SMITH.

Plymouth.   October 17, 1876.   COLT, DEVENS & LORD, JJ., absent.

A. put the cow of B., which had strayed upon his land, into his barn, and requested B. to take her away, who refused. A. then turned the cow into his pasture, which B. on the next day entered, and, after driving the cow towards his own premises, left her in A.'s pasture, and went away. The next day A. requested a field-driver to take care of the cow, and drove her out into the highway, where the field-driver immediately took her, and impounded her, and after notice to B. sold the cow for the damages and costs of keeping. *Held,* in an action against A. for the conversion of the cow, that the facts warranted, if they did not require, the jury to find that he never impounded the cow, and rightfully turned her into the highway, after B. had refused to receive her.

TORT for the conversion of a cow. Trial in the Superior Court, before *Putnam,* J., who reported the case for the consideration of this court, in substance as follows:

It appeared in evidence that the plaintiff's cow strayed from his lot upon the adjoining lot of the defendant on Thursday,

September 23, 1875. The cow had a clog upon her neck, and commenced jumping upon a young heifer of the defendant's in his lot. The defendant, fearing injury to his young animals, ordered the cow to be tied up in his barn. The plaintiff went to the defendant's barn, looked in, and saw his cow; and, as he was going home, passed the defendant, who notified him that his cow was in his barn, and that he wished he would take her away; and the plaintiff declined to do so. The defendant kept the cow in his barn until the next morning, and then turned her into his pasture, where she remained until Sunday. On Saturday, while the cow was in the pasture, the plaintiff came into the pasture, and drove the cow half way across the pasture towards his own premises, and then suddenly stopped, and went away. On Sunday afternoon, the defendant went to a field-driver, and told him he wanted him to go and take charge of the cow; that the cow was under his barn, and he would drive her out to him, and wished he would take the cow and take care of her. The field-driver accordingly went to the defendant's barn, and the defendant told his son to drive the cow out of the barn into the highway. His son did so, and the field-driver took possession of her, immediately, in the highway, as the defendant had requested him to do. The defendant told the field-driver that he should charge nothing for damages. The field-driver took the cow and carried her to the town pound. On his way he met the plaintiff, and told him he had his cow; and the plaintiff told him to drive on, he had nothing to do with it. The next day the field-driver notified the plaintiff that he had taken up and impounded the cow in the town pound. The field-driver then proceeded to sell the cow, for the damages and costs of keeping, which costs were $10.50. Before the sale, the plaintiff called upon the field-driver, told him he wanted him to give the cow some grain, and asked the auctioneer, employed by the field-driver to sell it, to get some one to bid off the cow for him at the sale. The auctioneer procured some one to do so, who bid off the animal for $24, on the plaintiff's account. The plaintiff paid the costs and expenses, $10.50, and took away the cow. On October 4, 1875, the plaintiff made a formal demand upon the defendant for the cow. After the field-driver took the cow, the defendant took no other steps in the matter, except to send

to the plaintiff a letter, notifying him that the cow had been impounded.

Upon this evidence the judge ruled that the plaintiff was entitled to recover, and ordered a verdict for the plaintiff for the sum of $45, the agreed value of the cow. If the ruling was correct, judgment was to be entered upon the verdict, unless the court should be of the opinion that the plaintiff, as he recovered back the property, could only recover the sum which he actually paid to the field-driver, to wit, $10.50, in which case judgment was to be entered for that sum only. If the ruling was incorrect, the verdict was to be set aside, and a new trial ordered.

*P. Simmons*, for the plaintiff, was first heard.

*W. H. Osborne*, for the defendant, was not called upon.

BY THE COURT. If the facts stated in the bill of exceptions afforded any evidence of a conversion to be submitted to the jury, they certainly did not constitute a conversion as matter of law. The facts warranted, if they did not require, the jury to find that the defendant never distrained or impounded the cow, and would have delivered her to the plaintiff at any time, but for his obstinacy in refusing to receive her, and that the cow was rightfully turned by the defendant into the highway. *Stevens* v. *Curtis*, 18 Pick. 227. *New trial ordered.*